1  Alexis Mager Lakusta, pro se
   1259 El Camino Real #245
2  Menlo Park, CA 94025
   (650) 566-9971
3

FILED
DEC -5 PM 4:10

4

5
                    IN THE UNITED STATES DISTRICT COURT
6
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
                              OAKLAND DIVISION
8

9

10

11 | Alexis Mager Lakusta,              )  C-07-03085 SBA
                                        )
12 |        Appellant                   )  Bankruptcy Court No. 02-31521
                                        )
13 | v.                                 )  **DECLARATION IN SUPPORT OF**
                                        )  **APPLICATION FOR EXTENSION**
14 | Mark Evans, et al.,                )  **OF TIME TO FILE OPENING**
                                        )  **BRIEF**
15 |        Appellees                   )
                                        )
16

17
         EXHIBITS A, B, C, AND D ATTACHED.
18

19    THE ABOVE-NAMED DECLARATION, A PROPOSED ORDER, AND PROOF

20 OF SERVICE PAPERS WILL BE FILED ON DECEMBER 6, 2007.

21

22 Dated: December 5, 2007        _Alexis Mager Lakusta_
                                   Alexis Mager Lakusta,
23                                 Appellant, pro se

24

25

DECLARATION IN SUPPORT OF APPLICATION FOR EXTENSION OF TIME
TO FILE OPEING BRIEF - 1

FILED
JUL 0 8 2002
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATES BANKRUPTCY COURT
## Northern District of California



Case # 02-31521 SFC11
Debtor: Alexis Mager Lakusta

Judge: Thomas E. Carlson

Chapter 11     Office 3-SF
Filed: 12:36 PM, July 08, 2002
Clerk, U.S. Bankruptcy Court
Northern District of California

Rcpt.# 030017376 - LL
TOTAL PAID: $20.00
by: David A. Boone

ORIGINAL

In re   Alexis Mager LaKusta _____,
                Debtor

Case No.   02-31521-c11

Chapter   11

## VERIFICATION OF LIST OF CREDITORS

I hereby certify under penalty of perjury that the attached List of Creditors which consists of 6 pages, is true, correct and complete to the best of my knowledge.

Date   3 July 2002          Signature   _____
                            of Debtor   ALEXIS MAGER LAKUSTA

exhibit A

vid A. Boone/Edward A. Kunnes
aw Offices of David A. Boone
1611 The Alameda
San Jose, CA  95126
408 291-6000

Alexis M. Lakusta FBA Trust
c/o Tom Tornga
PO Box 965
Zephyr Cove, NV 89448


Alexis M. Lakusta MGAL Trust
c/o Tom Tornga
PO Box 965
Zephyr Cove, NV 89448


American Express
PO Box 7871
Ft. Lauderdale, FL


Aurora Loan Services
2530 South Parker Road
Aurora, CO 80014


Bank of America
P O Box 53132
Phoenix, AZ 85072-3132


Botto Law Group
180 Montgomery Street, 16th Floor
San Francisco, CA 94104


Cal-Western Reconveyance Corporation
525 East Main Street
PO Box 22004
El Cajon, CA 92022


Capital One
PO Box  60000
Seattle, WA 98190-6000


Chase Manhattan Bank
c/o Chase Bankcard Services
PO Box 52176
Phoenix, AZ 85072

Citi Cards
PO Box 6413
The Lakes, NV 88901


Clark Pest Control
PO Box 1480
Lodi, CA 95241


Credit Bur. of San Mateo & Burlingame
P.O. Box 1242
San Mateo, CA 94401


Daoro Zydel and Holland
180 Montgomery Street, Ste. 700
San Francisco, CA 94104


Darleen Barnes
560 Old La Honda Road
Woodside, CA 94062


David Gilchrist
36 East Court Lane
Foster City, CA 94404


Discover Card
PO Box 15192
Wilmington, DE 19850-5192


Dunn & Bradstreet
6500 Rockside Ave
PO Box 318064
Independence, OH 44131-8064


Federal Express
PO Box 6110
Westerville, OH 43086-6110


First USA
PO Box 15548
Wimington, DE 19886

Franchise Tax Board
Special Procedures
PO Box 2952
Sacramento, CA  95812


Green Point Mortgage
2300 Brookstone Center Parkway
Columbus, GA 31904


Haxton Place Associates
242 Fawn Drive
San Anselmo, CA 94960


Household Finance Corp
PO Box 60101
City of Industry, CA 91716


In Any Event, Inc.
3036 Woodside Road
Woodside, CA 94062


Internal Revenue Service
5045 E. Butler Avenue
Fresno, CA 93888


IRS - Special Procedures Branch
Attn: Chaptter 13 Advisors
1301 Clay Street, Sec. Mail Code 1400S
Oakland, CA 94612-5210


Langley Hill Quarry
PO Box 620636
Woodside, CA 94062


Little David Pest Control, Inc.
776 Clinton Place
San Jose, CA 95126


Mark Clementi
50 Old Courthouse Square, Suite 400
Santa Rosa, CA 95404

Mark Evans
13651 Saratoga-Sunnyvale Road
Saratoga, CA 95070


MBNA America
P. O. Box 15102
Wilmington, DE  19886-5102


Nationwide Recovery Systems
2304 Tarpley Drive, #134
Carrollton, TX 75006


Northern Energy, Inc.
1155 North 15th Street
San Jose, CA 95112


OrbNetServices, Inc.
2379 Stratford Drive
San Jose, CA 95124


Pete Knoll, D.A.
Siskiyou County, NSF Check Program
PO Box 1346
Fair Oaks, CA 95628


PG & E
PO Box 997300
Sacramento, CA 95899-7300


Richard Elwood
100 No. El Camino Real
San Mateo, CA 944401-2705


Rottmayer Construction
242 Fawn Drive
San Anselmo, CA 94960


San Mateo County Tax Coll.
2200 Broadway
Redwood City, CA 94063

San Mateo County Tax Coll.
2200 Broadway
Redwood City, CA 94063


San Mateo County Tax Coll.
2200 Broadway
Redwood City, CA 94063


Secured Asset Management
1243 Broadway
Burlingame, CA 94010


Squire Sanders
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492


Steve Brooks
1216 Mildred Avenue
San Jose, CA 95125


Time Life
1450 Parham Road
Richmond, VA 23280


Trading Finance Capital
4533 Van Nuys Blvd
Sherman Oaks, CA 91403


U.S. Attorney General
Civil Trial Sec. Western
PO Box 683 Ben Franklin
Washington, DC 20044


United States Attorney's Office
Attn: Chief Tax Division
450 Golden Gate Ave. 10th
San Francisco, CA 94102


Washington Mutual
PO Box 23990
Oakland, CA 94623

Case No. 07-16596

2. What are the facts of your case?

Before proceeding with a chronological discussion of the facts of the case, appellant Alexis Lakusta begins this brief with a two-part overview statement that describes the essential nature of the case and that presents the two pivotal questions of law which Mr. Lakusta believes go to the heart of the matter before the court.

A. The Nature of the Case and Identification of the Legal Basis for Vacating the Bankruptcy Court's "Vexatious Litigant" Order

Appellant and original plaintiff Alexis Lakusta will show in this brief that the order from which he appeals is a wrongful injunction that was improperly obtained as part of a plan to subvert the adjudication process (a "fraud on the court") and thereby permanently conceal a "foreclosure equity stripping" scheme. He will also show that the defendants committed the crime of bankruptcy fraud, as defined by the United States criminal code, Title 18, Part 1, Chapter 9, section 157, against the Lakusta bankruptcy estate. The defendants are Mark Evans (alleged buyer/ "acquirer" – fraudulent procurement of grant deeds), Sharon E. LaFountain (Chicago Title Company senior escrow officer – forgery, fraudulent recordation of grant deeds, and fraudulent delivery of grant deeds), Chicago Title Company (title company handling sham escrows – escrow numbers 02970-000902695 and escrow number 02970-000902696), five of Evans' successive lawyers (facilitation of the defrauding scheme), and attorney David A. Boone, who allegedly represented Mr. Lakusta in settlement negotiations when he was debtor in possession (fraudulent misrepresentation to the Court and to the creditors of the Lakusta bankruptcy estate and perjury at trial in May, 2005).

**exhibit B**

Mr. Lakusta believes the Ninth Circuit Court's decision in this appeal from a "vexatious litigant" permanent injunction order against him ultimately rests – even more fundamentally than upon a review of Judge Carlson's misuse of his power of decision in **(a)** denying Mr. Lakusta a meaningful opportunity to be heard at the August 11, 2006 hearing and in **(b)** not complying with his obligation under Rule 52(a) of the Federal Rules of Civil Procedure by

    1. failing to make essential findings concerning disputed facts and by

    2. making conclusory findings on material issues –

upon two questions of law subject to de novo review:

1. Was the secret dismissal of Mr. Lakusta's June 10, 2002 adversary proceeding against Defendant Mark Evans (with causes of action for cancellation of instrument, quiet title, declaratory relief, and related claims), by means of a "Stipulation and Order of Dismissal" signed by Defendant Evans' attorney David Duperrault, Ron Oliner – counsel for the court-appointed chapter 7 trustee Charles Sims –, and Judge Thomas Carlson (who had previously approved the trustee's abandonment of "all the estate's right, title, and interest" in Mr. Lakusta's residence property at 633 Old La Honda Road, Woodside, California) **(a)** improper – obtained in violation of Rule 7041 (Dismissal of Adversary Proceedings), Rule 9019 (Compromise and Arbitration), and Rule 9014 (Contested Matters) of the Federal Rules of Bankruptcy Procedure and Rule 7-12 (Stipulations) of the Civil Local Rues (Northern District of California U.S.B.C.) – and **(b)** invalid and of no effect, due to a failure of the signing and filing requirements?

2. Did Judge Carlson make an error of law in ruling that an alleged contract ("settlement agreement and release"), completely absent of

mutual consideration, was enforceable under California law after he

- (a) failed to "police the bargain" at a trial held in May, 2005 by

    1. ignoring the "now thoroughly well-established" bargain theory of consideration "reflected in Restatement Second §71, which requires that a performance or return promise must be bargained for to constitute consideration" [FN1], by

    2. failing to make findings mandated by F.R.B.P. Rule 7052 – and dictated by a finding of the Legislature set forth in Cal. Civil Code §1695.(a-d) – to determine whether title to Mr. Lakusta's Woodside properties ever passed to Defendant Evans, and by

    3. failing to honor the preservation of claims order Mr. Lakusta obtained in exchange for signing a quitclaim deed, and

- (b) thereby failed to distinguish between a ransom agreement and a contract and concluded that a purported "settlement agreement and release" was enforceable based on an irrelevant precept?

B. <u>The Essential Nature of "Foreclosure Equity Stripping"</u>

According to Prentice Fox, Associate Clinical Professor of Law at the University of Minnesota Law School,

> Foreclosure equity stripping is the classic case of kicking someone who is down. The person perpetrating the equity strip – let's call this person the "acquirer" – targets homeowners who are in foreclosure and have equity remaining in the property. Promising to "save" the home for the desperate homeowner, the acquirer offers refinancing or other assistance to "stop the foreclosure." For too many foreclosed homeowners, these promises end when the acquirer or the acquirer's confederates gain title to the property and take the homeowner's equity. [FN2]

---

[FN1] Please see page 151, <u>Contracts</u>, Brian A. Blum, Third Edition, 2004, Aspen Publishers. Copy of pages 148-165 attached.

[FN2] <u>Foreclosure Equity Stripping: Legal Theories and Strategies to Attack</u>

According to the continuing legal education document titled "Foreclosure Rescue Scams – CLE Materials" that appears on the website of the attorney general of the state of Washington (www.atg.wa.gov), revised version June, 2007:

> A "foreclosure rescue scam" is a transaction or set of related transactions designed to prey upon homeowners faced with looming foreclosures. The scam artist's objective is to take all, or a substantial portion of, the homeowner's equity without providing any benefit (or any material benefit) in return. Ordinarily, the scam artist poses as a person seeking to earn a reasonable fee by helping the borrower avoid the foreclosure and preserve the home and the equity, but the scam artist then engineers a transaction whereby the homeowner loses both the home and the equity – but to the scam artist, rather than the foreclosure sale. [FN3]

Closer to home is the statement of the California Legislature embodied in the Home Equity Protection Act, or California Civil Code §1695-1695.17. The statute provides specific findings and guidelines for the courts as well as remedies for homeowners confronting equity stripping "acquirers", or "equity purchasers," under the laws of this state. Because of the statute's immediate relevance to – and bearing on – this appeal, and because the injunction obtained by Mr. Evans and Mr. Lakusta's former lawyers Pahl and Gosselin (Pahl and McCay), and specifically by Ms. Catherine Schlomann Robertson of that firm, is an attempt to circumvent the Legislature's explicit findings and the express policy of the state, and is furthermore an attempt to subvert the Legislature's explicit intentions and purposes in enacting the statute, Mr.

---

a Growing Problem, Prentice Cox, Clearinghouse REVIEW, Journal of Poverty Law and Policy, March-April 2006.
    The case before the court belongs to the first category of "rescue scams" discussed in Mr. Cox's article, fraud cases. This case does not involve a reconveyance transaction. The full text of the article is attached to this brief.

[FN 3] NJP Foreclosures White Paper, www.atg.wa.gov.

Lakusta quotes the entire opening section of Civil Code §1695 below:

> (a) The Legislature finds and declares that homeowners whose residences are in foreclosure have been subjected to fraud, deception, and unfair dealing by home equity purchasers. The recent rapid escalation of home values, particularly in the urban areas, has resulted in a significant increase in home equities which are usually the greatest financial asset held by the homeowners of this state.  During the time period between the commencement of foreclosure proceedings and the scheduled foreclosure sale date, homeowners in financial distress, especially the poor, elderly, and financially unsophisticated, are vulnerable to the importunities of equity purchasers who induce homeowners to sell their homes for a small fraction of their fair market values through the use of schemes which often involve oral and written misrepresentations, deceit, intimidation, and other unreasonable commercial practices.
>
> (b) The Legislature declares that it is the express policy of the state to preserve and guard the precious asset of home equity, and the social as well as the economic value of homeownership.
>
> (c) The Legislature further finds that equity purchasers have a significant impact upon the economy and well-being of this state and its local communities, and therefore the provisions of this chapter are necessary to promote the public welfare.
>
> (d) The intent and purposes of this chapter are the following:
>
> (1) To provide each homeowner with information necessary to make an informed and intelligent decision regarding the sale of his or her home to an equity purchaser; to require that the sales agreement be expressed in writing; to safeguard the public against deceit and financial hardship; to insure, foster, and encourage fair dealing in the sale and purchase of homes in foreclosure; to prohibit representations that tend to mislead; to prohibit or restrict unfair contract terms; to afford homeowners a reasonable and meaningful opportunity to rescind sales to equity purchasers; and to preserve and protect home equities for the homeowners of this state.
>
> (2) This chapter shall be liberally construed to effectuate this intent and to achieve these purposes.

C. <u>Background Facts for Understanding the Evans, et al. Equity-Stripping Scheme</u>

Appellant Alexis Lakusta, a Harvard College graduate and a Stanford-trained art historian and philosopher, purchased 633 Old La Honda Road, Woodside, California in September, 1990 for $968,000. **[Record item # 27,**

Robert E. Patterson
Squire, Sanders & Dempsey L.L.P.
600 Hansen Way #100
Palo Alto, Ca 94304-1043
Telephone: (650) 856-8500
Fax: (650) 843-8777


exhibit C

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:                                  ) Case No.: No. 02-31521
                                        ) Chapter 7
Alexis Mager Lakusta,                   )
                                        ) **ROBERT E. PATTERSON**
       Debtor.                          ) **DECLARATION IN MOTION TO**
                                        ) **VACATE TRIAL JUDGMENT**
                                        ) **ENTERED ON JUNE 8. 2005**
                                        )
                                        ) Date/Time: June 30, 2006
                                        )            @ 9:30 a.m.
                                        ) Place:    235 Pine St., 23rd Fl.
                                        )           San Francisco, CA

The undersigned, Robert E Patterson, states:

1. I am an attorney at law licensed to practice in the State of California.

2. I have known Alex Lakusta since he was a young man attending Harvard College more than 35 years ago. At the time I was a partner with his father Boris H. Lakusta at the law firm of Graham and James in San Francisco.

3. On or about May 22, 2002 I received a phone call from Mr. Lakusta. Alex stated he thought he was in big trouble and that he urgently needed to see me.

DECLARATION OF ROBERT E. PATTERSON - 1

4. On May 23, 2002 I met with Mr. Lakusta at my office at 600 Hansen Way in Palo Alto to discuss with him the recent events that had occurred regarding his Woodside properties on Old La Honda Road (Exhibit A). I am personally familiar with those properties.

5. Mr. Lakusta brought with him a Partnership Agreement document signed by himself and a man named Mark Evans concerning two of Mr. Lakusta's properties, located at 548 and at 579 Old La Honda Road. He also brought with him a document signed by Mr. Lakusta and Mr. Evans which Mr. Lakusta said was part of a Purchase Contract he had signed to sell Mr. Evans the property on which Mr. Lakusta's home was located. Mr. Lakusta stated that Mr. Evans had not provided him with a copy of the main part of the Purchase Contract.

6. I was particularly disturbed by Mr. Lakusta's description of a forgery of a grant deed to one of his properties. Mr. Lakusta said he believed that Mr. Evans' female partner had made the alterations to the document.

7. After listening to Mr. Lakusta's description of what had taken place between him and Mr. Evans and Mr. Evans' female partner, who Mr. Lakusta informed me was a notary public and an escrow officer at Chicago Title Company in San Jose, and after my review of the documents Mr. Lakusta had brought with him, I informed Mr. Lakusta it was my conclusion that Mr. Evans and his female partner had entered into a conspiracy to extract such value as Mr. Lakusta had in his real properties and to transfer such value to Mr. Evans' bank account, to the detriment of Mr. Lakusta and his creditors.

8. I advised Mr. Lakusta that perhaps the only realistic chance he had to recover his Woodside properties was to seek the protection of the

United States Bankruptcy Court. With Mr. Lakusta present, I made a telephone call to a Palo Alto bankruptcy attorney so that Mr. Lakusta could get immediately assistance.

9. I can personally attest that Mr. Lakusta is a person of exceptionally high moral character. I can also personally attest that Mr. Lakusta's parents had kept him largely sheltered from the ways of the world, and that as a consequence Mr. Lakusta was still overly trusting of others at the time of the events that occurred regarding his Woodside properties.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 20, 2006

*[signature]*
Robert E. Patterson

ROBERT E. PATTERSON

EXHIBIT A

**2002 Executive's Weekly/Monthly Planner**

DAY**M**INDER® Brand

Tony's Address: 1883 Union St. (over Noah's Bagels at Laguna)
415-515-2578

- Menlo Circus Club (closed Mondays) #999
  Parks & Elena          322-4616

- Z-Group              322-4194

- Palo Alto Club        325-5880
  567 Melville @ Webster 325-5777

- Bohemian Club (415) 885-2440    #27020
  624 Taylor between
  Sutter & Post

- Stanford Golf Club (closed Mondays) #42
                      323-0944

Mead Consumer & Office Products, 101 O'Neil Rd, Sidney NY 13838
www.at-a-glance.com   Made in USA   ©2000 The Mead Corporation

**Important Matters This Week**

23 - 26 May

### Thursday 23 (143/222)

9:00 Daybreak - Sundeck

11:00 a.m. — MRI follow up meeting — Conf. Rm "A" (Lunch)

— Alex Lakusta

12:00 Johannes Grey — if necessary
2:00 Spiegeleier — to Cenitope

### Friday 24 (144/221)

9:00 am Mtg w/ Gary & Debbie at Mellon

11:00 - Chuck Noland (Sygnus)

12:00 — Russian Consul General (Victor Lizun) & Natalia #4 at men's Circus Club

2:00 Stanford Martin O'Malley (323-0944)
Vernina —
3:00 SBH Curella Genomics — Conf Rm "C"
5:30 Ken @ Circus Club

### Saturday 25 / Sunday 26

Spring fix

1259 El Camino Real #245
Menlo Park, California 94025

24 October 2007

ORIGINAL
FILED

OCT 25 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

The Honorable Saundra B. Armstrong
United States District Court
1301 Clay Street, Courtroom 3
Oakland, California 94612-5212

In re: Lakusta - RELATED ACTIONS:
~~No. C 06-03431 SBA~~ AML.
~~No. C 07-00227 SBA~~ AML.
No. C 07-03085 SBA

Dear Judge Armstrong,
I would like to bring to your attention the following matters:

1. On Tuesday, October 16, 2007 I appeared in your courtroom with the largest creditor of my bankruptcy estate for the scheduled case management conference. We were fully prepared, with documents in hand, to discuss any issues which needed to be addressed. Assuming that my case would follow, we sat through a two and a half hour pretrial conference in an unrelated matter.
   At approximately 3:30 p.m. we were informed by your Courtroom Deputy Lisa Clark that the case management conference had been cancelled and that a cancellation notice had been mailed the previous day. To date, I have still not received the notice to which Ms. Clark referred, nor any other directive from your Courtroom.
   Ms. Clark also informed us that the cancellation notice could be viewed online in the Clerk's Office. However, we were told in the Clerk's Office that the last posting in any of the above-referenced cases was my certificate of service regarding the notice of continuance I had previously been directed to file.



exhibit D

2. Along with this letter, I will be filing the Case Management Statement which I had intended to hand you personally last Tuesday. I decided not to file the document in the Clerk's Office on October 16th because I first wanted to read the cancellation notice to which Ms. Clark referred.

3. I will also be filing with the Clerk of the Court a Notice of Appeal to the Ninth Circuit regarding your September 25, 2007 Order. For good reason, I did not file anything in case no. 07-0227 WHA that could have been reasonably construed as a legal brief, as you yourself made note of in your Order by placing quotation marks around the word "brief". I fully expected to receive an order to show cause, per Judge Alsup's order to which you referred in your September 25th Order, and I was fully prepared to do so. Knowing from experience with the court system that it is better to file something rather than nothing at all, I simply put on record a statement so as not to ignore the scheduled date altogether. I also included with that statement a copy of my notice of related pending appeals, and a not a statement "that purports to detail the status of other lawsuits Lakusta has filed." As I am sure you must be aware, two of the cases that were included in that notice, the case which you have already ruled on and the case that remains before you, were subsequently transferred to you by your own orders.

I hope you will treat the case that remains in your Courtroom with the seriousness it deserves. Please keep in mind that I am a pro se litigant and that I am not familiar with many court practices and procedures. The cases which were transferred to you concern the very serious matter of an elaborate equity stripping scheme and an attorney-assisted cover-up operation, including false accusations that I am a "vexatious litigant". I am completely confident that Judge Carlson's rulings will be reversed by the Ninth Circuit Court.

Respectfully submitted,

_Alexis Mager Lakusta_
Alexis Mager Lakusta